UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

———

ANTHOINE DESHAW ODOM,

        Plaintiff,        Case No. 1:08-cv-1181

v.        Honorable Paul L. Maloney

WILLIAM O. SMITH et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Keener*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Discussion**

I.    Factual allegations

Plaintiff presently is incarcerated at the Baraga Maximum Correctional Facility (MSP), but the events giving rise to his complaint occurred while he was incarcerated at the Ionia Maximum Correctional Facility (ICF). He sues the following ICF employees: Warden Willie Smith, Deputy Warden Nannette Norwood, Inspector Betty Goodson, Administrative Assistant Rodger Groves, Resident Unit Manager (RUM) (Unknown) Embry, Assistant Resident Unit Supervisor (ARUS) (Unknown) Kula, Sergeant (Unknown) Sheluckbier, Corrections Officers (Unknown) Dorman and Amy Scott, Resident Unit Officer (Unknown) Michalin, (Unknown) Teft and Law Librarian (Unknown) Vos.

Plaintiff's complaint is difficult to follow. It appears that in 2004 Plaintiff was charged with assaulting several prison employees.[1] Thereafter, Plaintiff was incarcerated at ICF and had multiple "run ins" with corrections officers due to the assault charge. (Attach. to p. 2 of Compl., docket #1.) The Michigan Department of Corrections (MDOC) eventually transferred Plaintiff to Standish Maximum Correctional Facility (SMF) where SMF staff allegedly retaliated against Plaintiff. (*Id.*) While Plaintiff was preparing a civil rights action against certain SMF staff, the MDOC transferred him back to ICF. (Attach. to p. 3 of Compl.)

Reading Plaintiff's complaint liberally, he essentially alleges three retaliation claims. First, Plaintiff claims that the MDOC transferred him to ICF to retaliate against him for the 2004 assault because one of his victims previously worked at ICF. (Compl. at 2; Attach. to p. 2 of Compl.) Once he returned to ICF, Plaintiff states that he was "'open game' for target practice."

---

[1]Plaintiff's complaint does not specify where he assaulted the prison staff.

(Attach. to p. 2 of Compl.) He alleges that the retaliation at ICF began with Defendant Teft refusing to give him yard time. (*Id.*)

Second, Plaintiff alleges that the MDOC transferred him to ICF to retaliate against him for preparing to file a civil rights action against SMF personnel. (Compl. at 2.)

Third, Plaintiff argues that certain ICF Defendants retaliated against him by removing legal property from his cell in order to inhibit his efforts to file a successful habeas corpus action and a civil rights action against SMF personnel. (Compl. at 3, Attach. to p. 3 of Compl.) Sometime after returning to ICF, Plaintiff flooded his cell. Defendant Michalin then confiscated Plaintiff's legal property, which consisted of filings for Plaintiff's application for habeas corpus relief and a civil rights complaint against SMF personnel. (*Id.*) Plaintiff requested assistance from Defendants Goodson, Embry, and Sheluckbier for the return of his legal property to no avail. Plaintiff also asked Defendant Grove, the head of the legal writer program, to help him obtain a copy of his "Actual Innoc[ence]" claim. (Compl. at 3.) Legal writers often maintain a copy of briefs that they prepare. Law Librarian Vos, however, would not release a copy without verification that Plaintiff's documents were destroyed. Although Plaintiff requested verification from Defendant Kula,[2] it does not appear that Defendant Kula sent any verification to Defendant Vos. (Attach. to p. 3 of Compl.)

Besides the retaliation claims, Plaintiff alleges that Defendants violated his right to access the courts under the First and Fourteenth Amendments by removing his legal material, violated the Double Jeopardy Clause by continuously punishing him and conspired against him. (Compl. at 3.) Plaintiff also argues that his belongings should not have been removed from his cell

---

[2] Plaintiff claims that he filed suit against Defendant Kula in 2005 but he does not allege in the instant complaint that Defendant Kula retaliated against him for the 2005 suit. (Attach. to p. 3 of Compl.)

- 3 -

pursuant to Michigan Department of Corrections, Policy Directive 04.07.112 (effective Nov. 15, 2004).

For relief, Plaintiff requests damages for his mental anguish, all of his major misconducts be "pulled off [his] record," and to be transferred to a lower security level prison. (Compl. at 4.)

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965; *Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. **Misconduct Conviction**

Plaintiff requests that all of his major misconduct convictions be removed from his record. (Compl. at 4.) This request implies the invalidity of those misconduct convictions. The Supreme Court has held that claims for declaratory relief and monetary damages that necessarily imply the invalidity of the punishment imposed are not cognizable under § 1983 until the conviction has been overturned. *Edwards v. Balisok*, 520 U.S. 641, 648 (1997) (addressing allegations of deceit and bias on the part of the decisionmaker in a misconduct hearing). The *Edwards* Court relied upon *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Edwards*, 520 U.S. at 646 (emphasis in original). As the Supreme Court recently has stated, "[t]hese cases, taken together, indicate that a state prisoner's § 1983 action is barred (absent prior invalidation) – no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings) – *if* success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81-82 (2005). Thus, where a prisoner's claim of unfair procedures in a disciplinary hearing necessarily implies the invalidity of the deprivation of good-time credits, his claim is not cognizable under § 1983. *Id.*; *see also Thomas v. Eby*, 481 F.3d 434, 438 (6th Cir. 2007); *Bailey v. McCoy*, No. 98-1746, 1999 WL

777351, at *2 (6th Cir. Sept. 21, 1999) (collecting Sixth Circuit decisions applying *Edwards* to procedural due process challenges).

In *Muhammad v. Close*, 540 U.S. 749, 754-55 (2004), the Supreme Court clarified that *Edwards* requires the favorable termination of a disciplinary proceeding before a civil rights action may be filed only in cases where the duration of the prisoner's sentence is affected. *Id.*; *Thomas*, 481 F.3d at 439; *Johnson v. Coolman*, 102 F. App'x 460, 461 (6th Cir. 2004). The Court noted that "[t]he effect of disciplinary proceedings on good-time credits is a matter of state law or regulation." *Muhammad*, 540 U.S. at 754. Under Michigan law, a prisoner loses good-time credits for the month of his major misconduct disciplinary conviction. *See* MICH. COMP. LAWS § 800.33. In addition, the warden may order forfeiture of previously accumulated good-time credits in cases. *Id.* Plaintiff does not assert that he did not forfeit good-time credits for the month of his conviction. Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction. *See Shavers v. Stapleton*, 102 F. App'x 900, 901 (6th Cir. 2004).

Under Michigan law, a prisoner may seek a rehearing of a decision made by the Hearings Division within thirty calendar days after a copy of the Major Misconduct Hearing Report is received. MICH. COMP. LAWS § 791.254; MICH. DEP'T OF CORR. Policy Directive 03.03.105, ¶ DDD (effective Jan. 1, 2007). Upon denial of his motion for rehearing, a prisoner may file an application for leave to appeal in the state circuit court. *See* MICH. COMP. LAWS § 791.255(2);

Policy Directive 03.03.105, ¶ GGG (concerning appeal). If he is not successful, he may then seek to overturn the convictions by bringing a federal habeas corpus action.[3]

Plaintiff does not allege that he sought to overturn his misconduct convictions in administrative hearings, state-court proceedings or in a federal habeas petition. Accordingly, Plaintiff's § 1983 claim is not presently cognizable. He therefore fails to state a claim on which relief can be granted. *See Morris v. Cason*, 102 F. App'x 902, 903 (6th Cir. 2004) (a claim barred by *Heck* is properly dismissed for failure to state a claim); *Murray v. Evert*, 84 F. App'x 553, 555(6th Cir. 2003) (same); *Harris v. Truesdell*, 79 F. App'x 756, 758-59 (6th Cir. 2003) (same).

B. **Retaliation**

In his complaint, Plaintiff alleges three retaliation claims. First, Plaintiff claims that the MDOC transferred him to ICF to retaliate against him for the 2004 assault. Second, Plaintiff alleges that the MDOC transferred him in retaliation for preparing to file a civil rights action against SMF personnel. Third, Plaintiff argues that Defendants retaliated against him by removing his legal property from his cell to stop Plaintiff from filing a habeas corpus action and a civil rights action against SMF personnel.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

---

[3]A misconduct conviction results in the loss of good-time credits, which is equivalent to a loss of a "shortened prison sentence." *Wolff v. McDonnell*, 418 U.S. 539, 556-57 (1974). A challenge to a "shortened" prison sentence is a challenge to the fact or duration of confinement that is properly brought as an action for habeas corpus relief. *Preiser v. Rodriguez*, 411 U.S. 475, 487-88 (1973). However, a prisoner must exhaust available state remedies before bringing a habeas corpus action, which would include appealing the conviction through the state courts. *See* 28 U.S.C. § 2254(b)(1).

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Construing Plaintiff's complaint liberally, *see Haines*, 404 U.S. at 520, Plaintiff appears to allege that his 2004 assault on prison staff and preparing to file a civil rights action against SMF personnel and a habeas petition are protected conduct. Assaulting a prison officer clearly is not protected conduct. According to the Michigan Department of Corrections' Offender Tracking Information System, Plaintiff was convicted of four assaults on prison employees in 2004 under MICH. COMP. LAWS § 750.197c.[4] The Sixth Circuit has held that a finding of guilt for a misconduct charge based upon some evidence of a violation of prison rules essentially checkmates a retaliation claim. *Burton v. Rowley,* No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. 2000) (citation omitted). Not only did Plaintiff violate prison rules by assaulting the prison employees, he was convicted of violating MICH. COMP. LAWS § 750.197c. Accordingly, Plaintiff's assault convictions checkmates his retaliation claim.

On the other hand, preparing to file a civil rights action and a habeas action are protected conduct for which a prisoner cannot be retaliated against. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. Oct. 17, 2002) (filing civil rights action is protected conduct); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (the First Amendment protects every inmate's right of access to the courts by way of direct appeals, habeas corpus applications, and civil rights claims)

---

[4]*See* http://www.state.mi.us/mdoc/asp/otis2profile.asp?mdocNumber=228931.

(citation omitted). Because Plaintiff was preparing to file a habeas action and a civil rights action against SMF staff, he satisfied the first prong of the *Thaddeus-X* test. *See Thaddeus-X*, 175 F.3d at 394.

For the adverse action requirement of the second prong of the *Thaddeus-X* test, Plaintiff alleges that he was transferred to ICF and Defendants destroyed his legal property. Even if Plaintiff satisfied the adverse action requirement, Plaintiff has failed to establish that a causal connection exists between the adverse action and his protected conduct. A plaintiff must show that the defendants' actions were motivated, at least in part, by a plaintiff's protected activity. *Thaddeus-X*, 175 F.3d at 399; *see Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) ("[C]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."). Plaintiff failed to show that Defendants' actions were motived by Plaintiff's protected activity.

First, Plaintiff does not allege that the ICF Defendants participated in the decision to transfer Plaintiff from SMF to ICF. There is no causation where a defendant is not the decision-maker. *See Smith v. Campbell,* 250 F.3d 1032, 1038 (6th Cir. 2001) (holding that one of the defendants' comments did not demonstrate a causal connection between the plaintiff's filing of grievances and the decision to transfer plaintiff because it was uncontroverted the defendant making the comment was not the decision-maker in the case). Second, Plaintiff does not allege that Defendants had any other reason, except for sanitation and safety, to remove Plaintiff's legal materials after Plaintiff flooded his cell. Preventing safety or sanitation hazards is a legitimate penological objective. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975, at *1 (6th Cir. Mar. 26, 1992). It is entirely reasonable that Defendants confiscated Plaintiff's property because Plaintiff flooded his cell. Plaintiff therefore fails to state a First Amendment retaliation claim.

C. **Access to the Courts**

Plaintiff argues that Defendants violated his First Amendment and Fourteenth Amendment right to access the courts by removing his legal property from his cell after the flood. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). "The right springs from the Due Process Clauses of the Fifth and Fourteenth Amendments and the right of petition found in the First Amendment," as well as from the Privileges and Immunities Clause of Article IV. *Cox v. Jackson,* 579 F. Supp. 2d 831, 848-49 (E.D. Mich. 2008) (citing *Hodge v. Prince*, 730 F. Supp. 747, 751 (N.D. Tex. 1990) and *Chambers v. Baltimore & Ohio R.R.*, 207 U.S. 142, 148 (1907)).

The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to

> slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. In sum, a prisoner's right to access the courts extends only to direct appeals, habeas corpus applications, and civil rights claims involving his conditions of confinement. *Id.*; *see also Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Plaintiff's complaint does not set forth a specific litigation-related harm related to Defendants' confiscation of the actual innocence claim from his habeas filing or the civil rights complaint. While he states that he was having trouble obtaining a copy of his actual innocence claim, Plaintiff never alleged that he suffered actual injury due to its absence. Further, Plaintiff does not explain why he could not replicate the actual innocence claim or civil rights complaint. At most, Plaintiff's allegations establish only that his pursuit of legal remedies was delayed or made more difficult by Defendants' actions. Such allegations fail to state a viable access to courts claim, as "[s]tanding alone, delay and inconvenience do not rise to the level of a constitutional deficiency."

*Cox,* 579 F. Supp. 2d at 849-50 (citing *Griffin v. DeTella*, 21 F. Supp. 2d 843, 847 (N.D. Ill. 1998), *Winburn v. Howe*, 43 F. App'x 731, 733 (6th Cir. 2002) and *Purkey v. Green*, 28 F. App'x 736, 742 (10th Cir. 2001)). Because Plaintiff failed to demonstrate actual injury to pending or contemplated litigation, he fails to state an access to courts claim. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis*, 518 U.S. at 351 (1996)).

Plaintiff also alleges that Defendants violated his due process rights by destroying his court filings. The Supreme Court has long held that the Due Process Clause prevents the states from denying litigants the use of established adjudicatory procedures, when such an action would be the equivalent of denying the litigant an opportunity to be heard upon their claimed rights. *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 429-30 (1982). As noted above, Plaintiff failed to allege that he has been denied an opportunity to be heard. Plaintiff has not explained why he could not replicate the civil rights complaint or the actual innocence claim for his habeas filing. Therefore, Plaintiff also fails to state a due process claim.

D. **Double Jeopardy**

Plaintiff contends that Defendants violated the Double Jeopardy Clause by "continuously punishing [him] without due process of [] law" when they tried to stop him from filing a habeas corpus action. (Compl. at 3.) The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The clause has been interpreted as protecting criminal defendants from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Where there is no threat of either

multiple punishment or successive prosecutions, the Double Jeopardy Clause is not offended. *United States v. Wilson*, 420 U.S. 332, 344 (1975). Moreover, the Double Jeopardy Clause applies only to judicial proceedings, not to administrative proceedings. *See Alessi v. Quinlan*, 711 F.2d 497, 501 (2d Cir. 1983); *Sand v. Bogan*, No. 93-2280, 1994 WL 112862, at *2 (6th Cir. Mar. 31, 1994). The taking of prisoner property by Defendants was administrative in nature. Therefore, Plaintiff's Double Jeopardy Clause claim is without merit.

E. **Respondent Superior**

Plaintiff sues Warden Smith and Deputy Warden Norwood but does not allege that either Defendant engaged in active unconstitutional behavior. A plaintiff bringing an action pursuant to §1983 cannot premise liability upon a theory of respondeat superior or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978)). As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)). Therefore, Plaintiff fails to state a claim against Defendants Smith and Norwood.

F.     **State Law Claims**

Plaintiff alleges that Defendants violated Michigan Department of Corrections, Policy Directive 04.07.112 regarding his personal property.   Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest).   Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81.

Plaintiff also alleges that Defendants conspired against him to stop his habeas corpus action. (Compl. at 3.)  To the extent that Plaintiff's complaint presents claims under state law, this Court declines to exercise jurisdiction.  "Where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits."  *Coleman v. Huff*, No. 97-1916, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998) (citing *Faughender v. City of N. Olmsted, Ohio*, 927 F.2d 909, 917 (6th Cir. 1991)); *see also Landefeld v. Marion Gen. Hosp., Inc.,* 994 F.2d 1178, 1182 (6th Cir. 1993).

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:   January 16, 2009            /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge